IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM J BUCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.: **3:12-cv-00273-JPG-PMF** |
| | ) |
| C/O HARTMAN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is Defendant C/O Hartman's (Doc. 29) motion for summary judgment and Plaintiff William J. Buck's (Doc. 32) response thereto. For the following reasons, it is recommended that C/O Hartman's motion for summary judgment (Doc. 29) be denied.

### I.   BACKGROUND

On March 28, 2012, the Plaintiff, William J. Buck, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. Buck is an inmate at Pontiac Correctional Center ("Pontiac"). During all times relevant to this lawsuit, Buck was an inmate at Menard Correctional Center ("Menard"). Both Pontiac and Menard are correctional facilities under the jurisdiction of the Illinois Department of Corrections ("IDOC"). The movant, Defendant C/O Hartman, was employed at Menard as a correctional officer during Buck's confinement at that institution. Buck alleges that Hartman was deliberately indifferent to Buck's serious medical condition on July 20, 2011, when he refused to summon medical attention for Buck while he was having difficulty breathing in his cell due to asthma.

1

On August 14, 2012, the Court conducted a preliminary review of the complaint pursuant to its authority in 28 U.S.C. § 1915A. *See* Doc. 11. In that order, the Court dismissed eight of the nine defendants identified in the complaint. *See id*. The Court also found that Buck stated a deliberate indifference claim against Hartman. *See id*. Hartman filed the instant (Doc. 29) motion for summary judgment on February 5, 2013, seeking a ruling on his affirmative defense of failure to exhaust administrative remedies.

## II.    DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with a lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC has a three-step process that prisoners under their jurisdiction are required to follow in order to exhaust administrative remedies. For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*. The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person

who is the subject of or who is otherwise involved in the [dispute]." *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill.Admin.Code § 504.830. The CAO typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id.* The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. The ARB typically makes a final determination within six (6) months after receipt of the appealed grievance. *See id*. With regard to prisoners under the control of the IDOC, administrative remedies may be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues by conducting an evidentiary hearing. *See Pavey*, 544 F.3d at 740-42. The Court is permitted to make findings of fact and credibility assessments of witnesses at such an evidentiary hearing. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). If the Court finds that the prisoner exhausted his administrative remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits." *See Pavey*, 544 F.3d at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

> (a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;
> (b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or
> (c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### A. Defendant Hartman's Evidence

Hartman argues that Buck failed to properly exhaust a grievance with respect to the remaining claim against him in this litigation. In support, Hartman has provided an affidavit from Jackie Miller, Chairperson of the ARB. *See* Doc. 29-1. Miller testifies that she has searched the ARB records for copies of grievances related to the allegations in this lawsuit, and she failed to locate any such records. *See id*. at 3 ¶ 7.

### B. Plaintiff's Evidence

Buck has submitted evidence in response to Hartman's (Doc. 29) motion for summary judgment in the form of his own affidavit and his testimony at the June 13, 2013 evidentiary hearing. *See* Doc. 32 at 5-6. Plaintiff testifies that he placed an emergency grievance in his cell door shortly after the incident that gave rise to this lawsuit. Within days of filing his emergency grievance, Buck received the medical attention for his asthma condition that he complained about in the grievance. He did not maintain a copy of the emergency grievance, and it has not been produced as evidence by either party. Buck testified as to the contents of grievance, confirming that it was a complaint about Hartman and request for medical attention. Buck attests that after he received the medical attention, the medical issue was resolved to his satisfaction. He believes the medical care received was in response to the filing of his emergency grievance. After receiving the required medical attention, Buck testified that he did not re-attempt to engage the administrative remedy process by filing a grievance through the normal channels.

### C. Analysis

Although a copy of the purported emergency grievance filed in July 2011 at Menard has not been made part of the record in this case, the Court has no reason to believe that it does not exist. Buck provided credible testimony as to its existence at the June 13, 2013 evidentiary

4

hearing. *See also* Doc. 32 at 5-6. Hartman has not offered admissible evidence questioning this testimony.[1]

Buck argues that, after he received the medical attention at Menard for the underlying medical attention, he had satisfied the PLRA exhaustion requirement. *See id*. For support, Buck points to 20 Ill.Admin.Code § 504.850(a), which provides that "[i]f, after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal…" 20 Ill.Admin.Code § 504.850(a). Because the problem was resolved to his satisfaction and the IDOC does not award monetary relief in the administrative process, Buck argues that he has done everything that he needed to do in order to satisfy the PLRA exhaustion requirement.

It is true that there is no futility exception to the PLRA exhaustion requirement. *See, e.g., Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 1820, 149 L. Ed. 2d 958 (2001) (providing that the 42 U.S.C. § 1997e(a) exhaustion requirement requires an inmate seeking only money damages to complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief); *Larkin v. Galloway*, 266 F.3d 718, 723-24 (7th Cir. 2001) (relying on U.S. Supreme Court's *Booth* decision for conclusion that there is no futility exception to 42 U.S.C. § 1997e(a) exhaustion requirement); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (same). However, the Seventh Circuit has had opportunity to consider an analogous situation to

---

[1] It is noted that Hartman filed an exhibit with his reply brief. *See* Doc. 38. This filing was later stricken by the Court's (Doc. 41) order striking Hartman's reply. The evidence could have been reintroduced at the evidentiary hearing, but it was not. An affidavit from Lori Oakley, Menard Grievance Officer, seems to indicate that Menard had no record of the emergency grievance. *See* Doc. 38 at 3-4 ¶¶ 9-10. An emergency grievance log was also attached, but the log seems to be missing entries from July 2011 and early August 2011. *See id*. at 5-11. In the end, this evidence would not have been sufficient to cast doubt on the credibility of Buck's testimony even if it had been fully considered.

here where 1) an inmate filed a grievance asking for equitable relief, 2) the equitable relief was granted by the institution, and 3) the inmate later filed a lawsuit for monetary relief. *See, e.g., Thornton v. Snyder*, 428 F.3d 690, 694-95 (7th Cir. 2005). In *Thornton*, an inmate filed a grievance regarding cell conditions. *See id*. A few weeks later, prison officials transferred the inmate to another cell. *See id*. at 695. The inmate later filed a suit for monetary damages, and the defendants argued that the inmate did not exhaust his administrative remedies because the inmate did not appeal a grievance through all of the available channels. *See id*. at 695-96. The Seventh Circuit distinguished the U.S. Supreme Court's *Booth* decision and similar authority by reasoning that, unlike the inmate in *Booth* where there was still some possibility that the inmate would receive some relief even if it was not the relief requested, the inmate in *Thornton* had received what he requested in his grievances; a transfer to another cell and a new mattress. *See id*. at 696. In reaching its conclusion that the inmate in *Thornton* satisfied the PLRA exhaustion requirement, the Seventh Circuit noted the following policy considerations:

> Thornton submitted grievances, so prison officials were on notice of his complaints, and we do not think it Thornton's responsibility to notify persons higher in the chain when this notification would be solely for the benefit of the prison administration. Moreover, appealing a favorable result risks reversal. And reversals of once-favorable results would tend to increase, not decrease, the number of inmate suits, running counter to another recognized policy behind the PLRA's exhaustion requirement, "to reduce the quantity and improve the quality of prisoner suits." *See* [*Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)].

*Id*. at 696-97.

The situation here is more analogous to *Thornton* than *Booth*. Buck filed a grievance asking for medical attention for his asthma condition. Menard prison officials responded by providing Buck with the requested medical attention. At that time, the prison officials were on notice of the problem and took steps to resolve it. Like the inmate in *Thornton*, Buck was then

under no obligation to appeal a grievance through all the administrative channels prior to filing this lawsuit because he had received a favorable result and monetary relief was not available. *See id*. at 696 (… with monetary relief unavailable, there was simply no "remedy" that a higher appeal could provide after Thornton received the transfer and new mattress he requested).

### III.   CONCLUSION & RECOMMENDATION

For the forgoing reasons, it is recommended that Defendant C/O Hartman's (Doc. 29) motion for summary judgment be denied.

**SO RECOMMENDED.**

**DATED: June 17, 2013.**

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE