**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **WILLIAM J. BUCK, #R21689,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:12-cv-00273-SMY-PMF** |
| | ) | |
| **C/O HARTMANN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court are the motions for summary judgment filed by the plaintiff WILLIAM J. BUCK (Doc. 92) and defendant C/O HARTMANN (Doc. 109). For the following reasons, it is recommended that Buck's motion for summary judgment (Doc. 92) be DENIED. It is further recommended that Hartmann's motion for summary judgment (Doc. 109) be DENIED.

Buck is an inmate at Stateville Correctional Center ("Stateville") serving a 60 year sentence for murder. Buck, previously an inmate at Menard Correctional Center ("Menard") and Pontiac Correctional Center ("Pontiac), filed a 42 U.S.C. § 1983 civil rights complaint on March 28, 2012 alleging deprivations of his constitutional rights. After the 28 U.S.C. § 1915A merits review, Judge Gilbert held that Buck articulated a colorable claim against Correctional Officer Hartmann for deliberate indifference to Buck's medical needs in violation of the Eighth Amendment. Judge Gilbert also held that Buck articulated a colorable First Amendment retaliation claim against defendants Mifflin and Lashbrook. The retaliation claim was severed into a new case (*See* 3:12-cv-00911) but it was later dismissed because Buck failed to pay the filing fee or submit a motion to proceed In Forma Pauperis.

The only remaining claim is Buck's Eighth Amendment deliberate indifference to medical needs claim against Hartmann. This dispute arises out of events that occurred while Buck was at Menard. Buck is a lifelong sufferer of asthma, and on one evening in late July 2011 he began to have an asthma attack. The asthma attack consisted of difficulty breathing, chest pains, wheezing, and coughing. Buck was prescribed an Albuterol inhaler which he kept in his cell, but on this occasion it failed to provide any relief. Buck's cellmate Eric Pepper realized that Buck needed medical assistance and he attempted to notify the correctional officers on duty. Other inmates in the cell house also tried to notify the guards, and approximately 30 to 40 minutes later Correctional Officer Kurtz arrived at Buck's cell. Buck told Kurtz that he needed to go to the hospital, and Kurtz went to get the Sergeant on duty.

Kurtz returned shortly thereafter with Correctional Officer Hartmann. Hartmann was the acting sergeant in that cell house. Hartmann told Buck that the prison was on lock-down status and that he would not be leaving his cell. Buck and other nearby inmates argued with Hartmann, and Hartmann responded by telling Buck that he should drink some water.[1] Hartman then walked away, but not before threatening to send Buck to "seg" (segregation) if he continued to complain.

After Hartmann left, Buck attempted to notify the nearby nurses that he needed medical assistance. While the prison is on lock-down there are nurses who distribute medication to the individual cells. The nurses are accompanied by correctional officers while they distribute the medication, and the nurses told Buck that he should fill out a sick call slip if he needed medical care. Buck decided that filling out a sick call slip would not resolve his asthma issues as quickly as he would like, and so he decided to fill out an emergency grievance. Emergency grievances bypass the normal grievance process and are delivered directly to the warden. Buck drafted and

[1] The cell houses at Menard are not air conditioned. In the responses to plaintiff's interrogatories the defendant states that "if it is hot outside, it is hot in the Menard cell houses."

submitted the emergency grievance the day after the asthma attack started. Approximately one week after the symptoms started Buck was seen by a doctor and taken to the Menard Health Care Unit ("HCU"). At the HCU he was treated with a nebulizer, X-Rays were scheduled to be taken, and the asthma was brought under control.

Illinois Department of Corrections medical records support Buck's timeline of events. Notes taken on July 9, 2011 (approximately three weeks prior to the asthma attack that forms the basis of this case) state that Buck was seen at the HCU for asthma treatment. Records from that day state that he demonstrated audible wheezing, he was not able to complete a full sentence without interruption, and under "Search for underlying cause" the note states "heat/humid days." On July 15 or 25[2] Buck was treated for eczema. Then on July 28 and August 3 there are entries stating that Buck requested a new albuterol inhaler, however the records do not indicate that he was examined on those days.

The records show that Buck was finally taken to the HCU on August 6, 2011. The handwritten medical notes for that day state:

> "MD NOTES
>
> S: Here for instructions about proper inhaler use.
>
> O: Bronchial wheeze bilaterally – Unresponsive to oral inhale
>
> A: Uncontrolled asthma – Inhale use 2-3 x 1 day"[3]

The medical notes continue; "[plan for] nebulizer breathing Rx today, Schedule for C. Xray on Monday 2/8/11" signed by S. Nwaobasi, MD on August 6, 2011 at 9:00 AM.

After the examination on August 6, Buck sought medical treatment on several other occasions, primarily for skin/eczema issues. In November of that year he was transferred to

[2] The notion that doctors have poor penmanship is a cliché but there is some degree of truth to that here.
[3] The medical records are written in Subjective, Objective, Assessment, Plan format, or "SOAP."

Pontiac and in March of 2012 he filed this lawsuit. Both parties now move for summary judgment on the merits.

Summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). A genuine dispute as to a material fact exists if "a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The Eight Amendment to the Constitution prohibits the infliction of cruel and unusual punishments on prisoners. U.S. Const. amend. XIII. An inmate's punishment "must not involve the unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

In order to establish that a prison staffer's deliberate indifference to an inmate's medical needs violated the Eighth Amendment, the plaintiff must demonstrate subjective and objective elements of proof. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The objective component is satisfied by an "objectively serious medical condition." *Id.* The condition must be "sufficiently serious or painful to make the refusal of assistance uncivilized." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Asthma specifically "can be, and frequently is, a serious medical condition, depending on the severity of the attacks." *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir.2005). In *Board* the plaintiff's asthma was held to be sufficiently serious where he was twice sent to the emergency room so that he could be put on a breathing machine. *Id*, *but see*

*Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (asthma exacerbated by "environmental tobacco smoke" resulting in "breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy" held to not be a serious medical condition).

The subjective component is satisfied by deliberate indifference and it requires a "sufficiently culpable state of mind." *Arnett*, 658 F.3d at 751. Deliberate indifference is a less demanding standard than purposeful, but it requires more than ordinary medical malpractice negligence. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). A prisoner who receives some treatment can still establish deliberate indifference, so long as the treatment received is "blatantly inappropriate." *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005)). Furthermore, "delay in treating a condition that is painful even if not life-threatening may well constitute deliberate indifference." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

Hartmann's motion for summary judgment argues two main points; that Buck's asthma was not an objectively serious condition, and that Hartmann is entitled to qualified immunity. Buck also seeks summary judgment on his Eighth Amendment deliberate indifference claim.

Hartmann argues the asthma was not an objectively serious condition because the circumstances are analogous to *Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996), and *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007), both cases where asthma was held to not be a serious medical condition. In *Oliver* the plaintiff was a prisoner at Pontiac who filed suit after his asthma was exacerbated by second hand smoke. On appeal the Court held his condition to be non-serious because the medical records and prison doctor deemed his asthma "mild" and the only other supporting evidence of the plaintiff's condition consisted of affidavits from fellow prisoners. *Oliver*, 77 F.3d at 158. At times, Buck's medical record also deems his asthma to be

"mild," however the physician notes from August 6, 2011 suggest that at that time his condition was more serious. The notes state that Buck was scheduled for a chest X-ray, a nebulizer treatment, and he was assessed to have "uncontrolled asthma." At this point in the litigation Buck does not need to prove that his asthma was objectively serious, but only that there is a genuine issue of material fact. Buck's medical record appears to demonstrate a more severe case (albeit perhaps shorter in duration) than what occurred in *Oliver*.

Hartmann also argues that the circumstances in this case are similar to *Williams*. *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007). In *Williams* the plaintiff was arrested by a Chicago city police officer after he failed a field sobriety test. *Id.* at 396. The plaintiff argued that his asthma became a serious medical condition when he was taken down to the police station for processing. *Id*. at 401. On appeal the court noted:

> "Williams's first mention of his asthmatic condition occurred when Officer Rodriguez asked him to take a breathalyzer test. It was at this point that Williams told Officer Rodriguez that he had asthma, "needed [his] medication," and "can't breathe." These statements, when arising in the context of a request for Williams to take a breathalyzer test, are insufficient by themselves to show that Williams was suffering from a serious asthma attack. At no other point during processing did Williams affirmatively request his inhaler or any medical attention from Officer Rodriguez or any of the other officers present." *Id.* at 402.

Buck's situation can easily be distinguished from the *Williams* case. The physician notes in Buck's medical records clearly substantiate his claim, unlike in *Williams* where there was no other evidence of an asthma attack (besides the plaintiff's own self-serving statements). In sum, it appears that there remains a genuine issue of material fact as to whether Buck's medical

condition was objectively serious. Because the defendant did not address the subjective prong of the deliberate indifference test, we will not discuss it here. Thus summary judgment should be denied on the issue of whether Hartmann was deliberately indifferent to Buck's medical condition.

The second issue in Hartmann's motion for summary judgment is whether Hartmann is entitled to qualified immunity. In *Lee v. Young* the Seventh Circuit aptly stated the standard:

> "Qualified immunity is a defense available to government officials performing discretionary functions that affords them protection from civil liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-part test is used to ascertain whether qualified immunity exists. First, the plaintiff must establish that the actions of the defendant violated his constitutional rights. *Triad Associates, Inc. v. Robinson*, 10 F.3d 492, 496 (7th Cir.1993). Second, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff must show, on some level, that a violation of this right has been found in factually similar cases, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case. *Borello v Allison*, 446 F.3d 742, 750." *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008).

As previously noted, Buck has alleged sufficient facts to survive summary judgment on the Eighth Amendment violation claim. Therefore Buck will satisfy the first prong of the qualified immunity analysis requiring him to "establish that the actions of the defendant violated his constitutional rights." *Id.*

The second prong of the qualified immunity analysis requires that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Seventh Circuit has held that asthma "can be, and frequently is, a serious medical condition, depending on the severity of the attacks." *Board*, 394 F.3d at 484. Asthma is a condition that affects a person's ability to breathe, and according to the Mayo Clinic, "a very severe asthma attack can lead to respiratory arrest and death."[4] In Hartmann's responses to Buck's interrogatories, Hartmann states that "the proper procedure for getting an inmate help for an asthma attack is to call the healthcare unit immediately, and the healthcare unit responds, checks the inmate, and makes the determination regarding proper treatment." Prison policies, of course, do not dictate what actions (or lack thereof) violate an inmate's Eighth Amendment rights. However, Hartmann's response strongly suggests that a reasonable official would understand that deliberate indifference to an inmate's asthma attack may constitute an Eighth Amendment violation. Thus Hartmann should not be entitled to qualified immunity.

The last remaining issue is Buck's motion for summary judgment. In Buck's motion for summary judgment he contends that he should be entitled to summary judgment on his Eighth Amendment deliberate indifference claim against Hartmann. In Hartmann's response to the motion for summary judgment, Hartmann argues that Buck's asthma did not rise to the level of a serious medical condition and therefore Hartmann's actions could not have constituted deliberate indifference to a serious medical need. When the facts and reasonable inferences are drawn in favor of the non-moving party (Hartmann in this instance), a genuine dispute remains as to

[4] Mayo Clinic Staff, Asthma Attack Complications, http://www.mayoclinic.org/diseases-conditions/asthma-attack/basics/complications/con-20034148 (last visited Oct. 16, 2014).

whether Buck's asthma was severe enough to become a "serious medical need." Summary judgment is thus inappropriate.

For the forgoing reasons, it is recommended that plaintiff Buck's motion for summary judgment (Doc. 92) be denied. It is further recommended that defendant Hartmann's motion for summary judgment (Doc. 109) be denied.

**SO RECOMMENDED.**

**DATED: October 16, 2014 .**

**s/Philip M. Frazier**
**PHILIP M FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**